***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission adopts with minor modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Cincinnati Casualty Company was the carrier on risk.
4. A Form 22 was submitted from which an average weekly wage may be determined.
5. Plaintiff's medical records from DeNamur Chiropractic Center were stipulated into evidence as Stipulated Exhibit 1.
6. Industrial Commission Forms and filings relating to this claim were stipulated into evidence as Stipulated Exhibit 2.
7. Medical documentation from The Johnson Neurological Clinic, Inc. was stipulated into evidence as Stipulated Exhibit 3.
8. Documentation from Bray-Maness Physical Therapy, Inc., was stipulated into evidence as Stipulated Exhibit 4.
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 39 years old and unemployed. Plaintiff had completed high school and worked as a carpenter. Plaintiff makes and sells sculptures, has worked in pottery, and has also dealt in antiques/junk furniture.
2. Plaintiff began working for defendant-employer in June 1998, as an installer of carports, blinds and windows. Plaintiff worked approximately 40 hours a week and was paid by the hour and received overtime compensation. Ken Callicut was plaintiff's supervisor and Alan Pugh was the owner of defendant-employer. Plaintiff left defendant's employ on 27 May 1999, and returned in August 1999.
3. Plaintiff testified that on 4 January 2000, he and Ken Callicut were installing a carport at the Asheboro Goodyear plant. Plaintiff and Mr. Callicut were required to drill and sledgehammer areas of the cement to make holes for the carport posts.
4. Plaintiff testified that while attempting to set posts through the concrete with a sledgehammer, he felt a "slight popping sensation in his lower back." Plaintiff stated that he felt light-headed and nauseous, but he did not experience serious pain following the "popping." Plaintiff testified that he informed Mr. Callicut of the incident, but he continued to work and complete the Goodyear job.
5. Plaintiff testified that when he returned to the shop, he could feel a slight limp coming on and some pain in his back. Plaintiff testified that he reported this to another supervisor, Allen Pugh, and that he asked Mr. Pugh if he could go home at 2:00 p.m. because he was not feeling well. Plaintiff did not indicate he had injured himself. Mr. Pugh informed plaintiff that he had repair work that needed to be completed and told plaintiff he could leave when the work was finished. Plaintiff worked for another two hours before leaving for the day.
6. Plaintiff testified on direct examination that his injury happened on Tuesday, 4 January 2000, and that on Wednesday morning, 5 January 2000, he called Mr. Pugh and informed him that he had injured his lower back by pinching a nerve or pulling a muscle. Plaintiff testified that Mr. Pugh instructed him to stay in contact about his condition. Later on cross examination, plaintiff testified that he did not call Mr. Pugh on 5 January 2000, but called him on 6 January 2000.
7. Plaintiff did not return to work for defendant-employer during the following week and he testified that he called Mr. Pugh the next week to inquire about possible workers' compensation benefits for his back. Plaintiff stated that Mr. Pugh informed him the company could not afford a workers' compensation claim and plaintiff was fired because he had missed work on 5 January 2000. Plaintiff never returned to work after 4 January 2000.
8. Mr. Pugh testified that when plaintiff left defendant's employ in May 1999, there had been some issues regarding plaintiff's attendance at work in that on occasions plaintiff failed to call in when he wasn't coming to work or plaintiff had to be called to see if he was coming in. When plaintiff returned to work for defendant in August 1999, a condition of his employment was that he improve his attitude and call in when he needed to miss work. Mr. Pugh testified that while he had spoken to plaintiff on 4 January 2000, plaintiff never told him that he had been hurt on the job or that he had hurt his back as a result of his employment. Plaintiff corroborated this statement and agreed that he had provided no explanation or description of his injury to Mr. Pugh. Mr. Pugh further testified that plaintiff did not call on 5 January 2000, or report to work. When plaintiff called on 6 January 2000, he stated that he was hurt, but did not tell Mr. Pugh that his injury was job-related.
9. Plaintiff next contacted Mr. Pugh on 10 January 2000 and told Mr. Pugh he was still hurt, but again, nothing was said about why plaintiff was hurt or how the injury occurred. Plaintiff called in on 11 January 2000 to tell Mr. Pugh that he would not be in to work, but still did not allege that he had been hurt on the job. Plaintiff did not call in on 12 January 2000, but called in on 13 January 2000 seeking payment for a doctor's visit. Mr. Pugh testified that this was the first time plaintiff alleged to him that the injury was job-related. Mr. Pugh further testified that on 13 January 2000, he told plaintiff that he had been terminated effective 5 January 2000 due to plaintiff's violation of the initial employment agreement when he failed to call in and report that he was going to be absent from work. Plaintiff's termination was due to a condition of his employment and not related to the workers' compensation claim.
10. Plaintiff did not seek any type of medical treatment for his back until 7 March 2000, when he went to Dr. Darin L. DeNamur, DeNamur Chiropractic Center, complaining of lower back pain and numbness in his left leg and foot, which he alleged occurred on 5 January 2000. Dr. DeNamur diagnosed plaintiff with a moderate lumbar strain, lumbar segmental dysfunction, lumbalgia, and neurities or radiculitis. Plaintiff was treated by Dr. DeNamur from 7 March 2000 through 1 May 2000, at which time he was released from further care.
11. Plaintiff testified that Dr. DeNamur's treatment relieved plaintiff's pain considerably but did not provide a complete cure. Plaintiff contends he was unable to work during the time he was treated by Dr. DeNamur because he could not walk a long distance or lift much weight. However, Dr. DeNamur did not remove plaintiff from work during the time of his treatment or impose work restrictions at any time during his treatment, and his medical records do not indicate medical restrictions for plaintiff.
12. A Mr. Schwartz hired plaintiff as a handyman in June 2000 at a wage of $10.00 per hour. Plaintiff was unable to work more than one day because of his recurrent back problems.
13. On 7 June 2000, plaintiff presented to Dr. Sandhu, a family practitioner. Plaintiff indicated he was having back pains and received prescriptions for his pain. Plaintiff did not receive relief as a result of these prescriptions and Dr. Sandhu ordered an MRI that revealed an annular bulging disc at L4-5 and L5-S1 and disc protrusion at L5-S1. Dr. Sandhu referred plaintiff to Dr. Michael B. Hussey, Johnson Neurological Clinic.
14. Plaintiff presented to Dr. Hussey on 6 July 2000 complaining of low back and left hip pain. Dr. Hussey diagnosed plaintiff with degenerative disc disease at L5-S1 and degenerative changes in the lower lumbar spine but no fractures or subluxations. Dr. Hussey suggested steroid injections for plaintiff's pain but plaintiff refused. Dr. Hussey referred plaintiff to physical therapy and ordered x-rays of his pelvis and hips. The x-rays indicated plaintiff's pelvis and hips were normal. Dr. Hussy did not recommend that plaintiff stay out of work.
15. Plaintiff testified that he has not returned to Dr. Hussey or any other physician for additional medical treatment after being released by Dr. Hussey on 20 July 2000. None of plaintiff's physicians testified or noted in their records that plaintiff's condition was or could have been related to or aggravated by the work-related incident described by plaintiff.
16. Plaintiff testified that he had no problems with his back prior to 4 January 2000 and had not had any problems with his back in the past. This testimony is inconsistent with the information sheet plaintiff filled out for Dr. DeNamur indicating that plaintiff had a history of a pinched nerve. Plaintiff also stated in interrogatory responses and in a recorded statement that he had sought treatment for a pinched nerve in the past.
17. Plaintiff contends that he is unable to work because of physical limitations that prohibit him from being able to squat or bend continuously, lift heavy objects and stand for long periods of time. Plaintiff's testimony that he sustained a work-related injury to his back on 4 January 2000 is not accepted as credible.
18. Plaintiff has applied for unemployment benefits but had not received any benefits as of the date of the hearing before the Deputy Commissioner.
19. Plaintiff testified he has sold antiques/junk furniture all of his life and is currently doing so in order to provide income.
20. Plaintiff has failed to prove by the greater weight of the evidence that he sustained a compensable injury by accident arising out of and in the course of his employment on 4 January 2000.
21. Plaintiff has not developed an occupational disease relating to his employment with defendant-employer.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. To prevail in a claim for compensation based upon a specific traumatic incident, an employee is required to prove that the back injury in question arose in the course of the employment and that the injury was the direct result of a specific traumatic incident of the work assigned.Caskie v. R.M. Butler Co., 85 N.C. App. 266, 354 S.E.2d 242 (1987). Plaintiff has failed to prove by the greater weight of the evidence that he has sustained a back injury as the result of a specific traumatic incident of the work assigned. Id.; N.C. Gen. Stat. § 97-2(6).
2. To prevail in a claim for compensation based upon an occupational disease, an employee must prove that the employee's disablement results from an occupational disease which is due to causes and conditions which are characteristic of and peculiar to the employee's particular employment, as distinguished from an ordinary disease of life to which the general public is equally exposed outside of the employment.Morrison v. Burlington Indus., 304 N.C. 1, 282 S.E.2d 458 (1981). Plaintiff has failed to prove by the greater weight of the evidence that he has developed or contracted an occupational disease arising out of and in the course of his employment with defendant-employer, or that his condition is due to characteristics peculiar to his employment and distinguished from an ordinary disease of life to which the general public is equally exposed outside of plaintiff's employment. N.C. Gen. Stat. § 97-53(13).
3. Therefore, plaintiff's claim is not compensable under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6); N.C. Gen. Stat. § 97-53(13).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiff's claim must be, and the same is hereby, DENIED.
2. Each side shall bear its own costs.
This the ___ day of May, 2002.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN